IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANCES K. WISE, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 02-B-0943-S |
| COLONIAL BANCGROUP, INC., | } |
| Defendant. | } |

**MEMORANDUM OPINION**

ENTERED
MAR 25 2004

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 29.) Plaintiff Frances K. Wise has sued her former employer, defendant Colonial Bancgroup, Inc., alleging that defendant discriminated against her on the basis of her gender and her age, and for taking leave under the Family and Medical Leave Act. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 29), is due to be granted.

**I. SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff was formerly the City/County President[1] for defendant in St. Clair County, Alabama. Defendant terminated plaintiff, a female, on August 20, 2001; she was 59 years old at that time.

---

[1] The position of City/County President is also referred to as the Area President, the City President, or the County President. Doc. 30, Ex. 1 ¶ 5. For consistency, the court will refer to this position as the City/County President.

At the time of her termination plaintiff held an MBA and had completed graduate school at the Graduate School of Community Bank Management of the University of Texas, and she had 27 years of banking experience. (Doc. 33, Ex. A at 264; Doc. 33, Ex. 2.)

Plaintiff began working for defendant on February 5, 1998, following defendant's purchase of certain branches of the Asheville Savings Bank. (Doc. 30, Ex. 6 at 20 & ex. 5.) While with Asheville Savings Bank, plaintiff's loan experience was approximately 65% residential and 20% commercial. (Doc. 30, Ex. 6 at 155-57.) After the purchase, she was in charge of six of the former Asheville Savings Bank branches. (*Id.* at 30-31.) Plaintiff supervised more branches than any other City/County President in defendant's East-Central Region. (*Id.* at 185; doc. 30, Ex. 7 at 67.) Plaintiff was the only female City/County President in the East-Central Region. (*See* doc. 30, Ex. 1, ex. B.)

Donald Slick (DOB March 13, 1950)[2] was also a City/County President in St. Clair County. (Doc. 30, Ex. 1 ¶ 3.) He was in charge of defendant's branches in St. Clair County that pre-dated the purchase of the Asheville Savings Bank branches. (*Id.*) He was hired on January 8, 1987, and had worked as Senior Vice President and Commercial Lender prior to becoming a City/County President. (*Id.*)

Commercial loans are more complex than consumer and residential real estate loans. (Doc. 30, Ex. 6 at 211-12.) Defendant stopped making residential real estate loans around

---

[2]Doc. 30, Ex. 1 ¶ 3.

August of 2000. (Doc. 30, Ex. 4 ¶ 19.) By the summer of 2001, commercial lending was defendant's focus. (*Id.*)

Both plaintiff and Slick worked in St. Clair County, which is in the East-Central Region; the East-Central Region also covered branches in Etowah, Calhoun, Blount, Randolph, Clay, and Cleburne counties. (Doc. 30, Ex. 1, ex. B.) Only St. Clair County and Calhoun County had more than one City/County President. (*Id.*) Max Payne (DOB May 24, 1939),[3] Senior Area President of the East-Central Region, was the direct supervisor of the City/County Presidents in the East-Central Region. (Doc. 30, Ex. 7 at 10.) Payne reported to Jack Naramore, President and CEO for the Central Alabama Region. (Doc. 30, Ex. 7 at 17.) Alan Hubbard (DOB January 8, 1954)[4] was the Area Senior Lender for the East-Central Region and he reported to directly to Payne. (Doc. 30, Ex. 9 at 5, 7.)

According to Payne, "The most important function in the bank . . . is loan production," and the bank expected its City/County Presidents "to generate loan business." (Doc. 30, Ex. 7 at 69.) In fact, generating "a profitable loan portfolio" is listed first as an essential job function of the City/County President. (Doc. 30, Ex. 1, ex. A.) Hubbard and Payne received weekly loan production reports that detailed new and renewed loans by lending officer, including City/County Presid-ent, for the East-Central Region. (Doc. 30, Ex. 9 at 16-18, 38.) Mr. Hubbard was also aware of which City/County Presidents did more

---

[3] Doc. 30, Ex. 2 ¶ 1.

[4] Doc. 30, Ex. 4 ¶ 1.

lending based on attending loan committee meetings with them weekly and conferring with them on a regular basis regarding loans. (*Id.* at 23-24.) Naramore received summary reports containing this same information. (*Id.* at 38.)

Plaintiff testified that she was told to emphasize supervision of her branches and not to be concerned with her own personal loan portfolio. (Doc. 30, Ex. 6 at 185-86.)

On May 22, 2000, plaintiff applied for FMLA leave in order to care for her ailing father. (Doc. 30, Ex. 6 at 293, 296.) She applied again for intermittent FMLA leave to care for her father on July 17, 2001. (Doc. 33, Ex. 22.) She took approximately 84 hours of intermittent FMLA leave in 2000 and 2001. (Doc. 30, Ex. 6 at 297 and ex. 34.)

Mary Kennedy, Human Resources Generalist, handles FMLA requests in the East-Central Region; she handled plaintiff's two FMLA leave requests. (Doc. 30, Ex. 5 ¶¶ 1, 2.) Vicki Mize, Area Administrator of Human Resources and Operations for the Central Alabama Region, testified that she did not specifically recall that plaintiff had applied for or had taken FMLA leave. (Doc. 30, Ex. 10 at 44-45.) Hubbard, Payne, and Naramore did not know that plaintiff had taken FMLA leave. (Doc. 30, Ex. 4 ¶ 12; Ex. 7 at 46-47; Ex. 8 at 29, 40.)

On August 13, 2001, Flake Oakley, defendant's Chief Financial Officer, sent a memo to all Regional Presidents that stated that each Region was required to reduce its overall expenses by 3% because "revenue growth has been slow" and because defendant had been engaged in aggressive expansion. (Doc. 30, Ex. 3 ¶ 2 and ex. A.) The memo specifically established a target of 3% for reductions in salaries. (*Id.* ex. A.) Hubbard, Payne, Mize, and

5

Naramore met the week of August 13, 2001, to determine how to "comply with the expense reduction mandate." (*Id.* ¶ 3.) One of the ways that Hubbard, Payne, Naramore, and Mize decided to reduce East-Central salaries was to eliminate one of the two City/County President positions in St. Clair County. (*Id.*) This meant that either plaintiff or Slick would be terminated. Apparently, Mize did not have input into the decision to terminate plaintiff or Slick. (Doc. 30, Ex. 10 at 31) (was not asked for input in discussion as to which individual should be retained), (Doc. 33, Ex. 22, Tab D at 37) ("they [referring to Naramore, Payne, and Hubbard] came up with the conclusion of the two people that were in those jobs in each area, who they felt like would be the one that they would need to eliminate.") (Doc. 33, Ex. 22, Tab 1 at 39.) (Mize did not "play any part in . . . conversations about individuals that were being considered.")

After discussing the job requirements of the City/County President position, loan production, and experience in commercial lending, Hubbard, Naramore and Payne decided to retain Slick because he had better individual loan production and because he had stronger commercial lending skills that enabled him to better serve as a mentor to other lenders. (Doc. 30, Ex. 2 ¶¶ 4-5; Ex. 3 ¶¶ 4-5; Ex. 4 ¶¶ 3-4; Ex. 7 at 64-65; Ex. 8 at 41-42; Ex. 9 at 20-21, 32-33.)

Mize and Jeannie Martin met with plaintiff on August 20, 2001, and gave her a letter, which stated that her job had been eliminated as part of an effort to reduce expenses. (Doc. 30, Ex. 6 at 109-10 and Ex. 12, 13.) The letter also stated that, because her position was being eliminated, she was eligible for employment in another, available position with

6

defendant, and a list of available positions was attached to the letter. (*Id.* Ex. 6 at 121, Ex. 12-13.) Plaintiff did not apply for another position because she contends the available positions paid about half of what she had earned as a City/County President. (Pl. Brief in Opp. to Mot. for Summ. J. at 9.)

### III. DISCUSSION

#### A. GENDER AND AGE DISCRIMINATION CLAIMS

Pursuant to the Age Discrimination in Employment Act, the ADEA, it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits an employer from discharging an individual because of her gender. 42 U.S.C. § 2000e-2. "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision. That is, the [protected trait] must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)(quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993))) (internal citations and quotations omitted).

Plaintiff contends that summary judgment is due to be denied based on direct and circumstantial evidence of discrimination.

7

### 1. Direct Evidence

Plaintiff contends that Payne made "discriminatory statements and gestures . . . concerning women and employees with illness[es]," that "may very well rise to the level of direct evidence." (Pl. Br. in Opp. to Mot. for Summ. J. at 13.) "Direct evidence is '[e]vidence, which if believed, proves existence of fact in issue *without inference or presumption*.'" *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)(quoting Black's Law Dictionary 413 (5th ed. 1979)(emphasis in original). Although it may seem reasonable to infer that a person who makes a discriminatory remark outside of the decisional process will conduct business in a discriminatory manner, such a conclusion requires an inference. Therefore, comments made completely outside of the decisional process do not constitute direct evidence that the speaker discriminated in making the employment decision at issue. *Compare Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930-31 (11th Cir. 1995)(holding that employer's statement that women were not tough enough to do the job could constitute direct evidence of sex discrimination) *with Equal Employment Opportunity Comm'n v. Alton Packaging Corp.*, 901 F.2d 920, 923-24 (11th Cir. 1990) (holding that decision maker's statement to black employee that "you people can't do a --------- thing right" did not constitute direct evidence of discrimination).

As direct evidence of discrimination, plaintiff contends that on two occasions Max Payne made fun of women making loan presentationss. [(Doc. 33, Ex. A at 347-48.)] Max Payne also made comments about Randy Smith's health problems. [(Doc. 33, Ex. A at 355-57.)]" (Pl. Br. in Opp. to Mot. for Summ. J. at 8.) In her deposition, plaintiff testified that

Payne made fun of a "lady loan officer" presenting a loan by speaker phone by gesturing his hands like a mouth talking. (*Id.*) Also, one time he made the comment "Not her again" referring to a female loan officer. (*Id.* at 348.) She also testified that Payne commented on the fact that Smith was "[s]ick again," when Smith did not attend a loan committee meeting. (*Id.* at 356.). These comments are not direct evidence that Payne terminated plaintiff because of her gender or because she had requested and taken FMLA leave.

### 2. Circumstantial Evidence

In order to prevail on her gender and age claims, plaintiff must first make a *prima facie* showing of discrimination, which requires her to show (1) that she is a member of a protected group; (2) that defendant subjected her to an adverse employment action; (3) that she was qualified for her position; and (4) that similarly situated employees outside the protected class were treated more favorably. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)(citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998)), *cert. denied* 529 U.S. 1109 (2000). The prima facie case requirements have been refined for situations where the plaintiff's position was eliminated pursuant to a reduction in force ("RIF"). In such a case, elements (3) and (4) above, are replaced by a requirement that plaintiff show she "was qualified to assume another position at the time of [her] discharge or demotion" and provide "evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Coker v. Amoco Oil Co.*, 709 F.2d 1433,

1438 (11th Cir. 1983), *superseded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989).

Defendant contends that it decided to eliminate one of the two City/County President positions in St. Clair County to reduce expenses. The evidence is undisputed that plaintiff was qualified for the City/County President position. Moreover, the evidence is undisputed that defendant retained, or preferred, Slick, the male City President in St. Clair County who was younger than plaintiff. Therefore, the court finds that this evidence is sufficient to establish a prima facie case of age and gender discrimination with regard to plaintiff's termination.

"Once a prima facie case is established, a defendant must proffer legitimate, nondiscriminatory reasons for its employment decision. If such reasons are identified, a plaintiff then bears the ultimate burden of proving them to be a pretext for age [or sex] discrimination." *Damon*, 196 F.3d at 1361 (citing *Turlington*, 135 F.3d at 1432).

Defendant contends that plaintiff's position was eliminated for legitimate, nondiscriminatory reasons. Specifically, defendant contends that plaintiff's position was eliminated as part of a reduction in force, which was designed to reduce expenses in her region. Defendant, specifically Payne, and his superior, Naramore decided to eliminate one City/County President position in each county with two City/County President positions. Together, they and Hubbard decided that plaintiff's City/County President position would be eliminated because plaintiff's loan production was considerably less than that of Slick and because Slick had considerably more experience than plaintiff in commercial lending. These

10

reasons are sufficiently clear and reasonably specific to shift the burden to plaintiff to establish that the reasons are a pretext for age and gender discrimination. *See Chapman*, 229 F.3d at 1036; *Increase Minority Participation by Affirmative Change Today of Northwest Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1194 (11th Cir.), *cert. denied, sub. nom. Sec'y of State v. Walker,* 498 U.S. 847 (1990).

Because defendant has articulated a legitimate nondiscriminatory reason for plaintiff's termination –

> the presumption of discrimination is eliminated and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.

*Chapman*, 229 F.3d at 1024-25 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528-29 (11th Cir. 1997), *cert. denied sub. nom. Combs v. Meadowcraft Co.*, 522 U.S. 1045 (1998))(internal citations and quotations omitted).

Plaintiff may establish that an articulated reason is a pretext for age and/or gender discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1445 (11th Cir. 1985)(quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)), *cert. denied* 474 U.S. 1005

(1985)). If a plaintiff chooses to establish pretext by showing that his employer's proffered reason is unworthy of credence, she must attack that reason "head on and rebut it." *Chapman*, 229 F.3d at 1030. The plaintiff must offer evidence that "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

"[T]he Eleventh Circuit Court of Appeals has repeatedly held that, where a claim of discrimination is based on relative qualifications, disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1167-68 (11th Cir. 2003)(quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)(quoting *Deines v. Tex. Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999)))(internal quotations omitted). Moreover, a plaintiff cannot prove pretext simply by quarreling with the wisdom of her employer's decision. *Chapman*, 229 F.3d at 1030 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43).

Plaintiff offers numerous reasons why she believes that the defendant's articulated reasons are pretextual. However, these reasons do not rebut "head on" defendant's contentions that it decided to terminate one of the two City/County President positions in St.

Clair County and that it chose to retain Slick and terminate plaintiff based on Slick's greater individual loan performance and his superior commercial lending experience.

For example plaintiff contends that Payne, one of the decisionmakers, did not remember "how the decision [to eliminate a City/County President position] was made, what he and Jack Naramore discussed in substance or even anything about the conversation." (Pl. Br. in Opp. to Mot. for Summ. J. at 16 (citing doc. 30, Ex. 7 at 93-94.) However, Payne did testify that he remembered that the decision regarding whether to retain plaintiff or Slick "boiled down to loan productivity," and that individual loan productivity "was the most important issue." (Doc. 30, Ex. 7 at 93-94.) Plaintiff does not dispute that her individual loan productivity was substantially less than Slick's individual loan productivity, and she has not demonstrated sufficient evidence to create a question of fact as to whether the decisionmakers actually relied on this factor in making their decision.

Also, plaintiff contends that defendant had a detailed procedure in 1999 for accomplishing a reduction in force and that it did not have a formal procedure or follow 1999 procedure in 2001. (Pl. Br. in Opp. to Mot. for Summ. J. at 17 (citing *Bass v. Orange County Bd. of County Comm'rs*, 256 F.3d 1095, 1108 (11th Cir. 2001).) The court has reviewed the 1999 Workforce Reduction Plan cited by plaintiff and finds that the procedures employed in plaintiff's termination do not vary significantly from those set forth in the 1999 Workforce Reduction Plan. (*See* doc. 33, Ex. 8) For example, the Plan provided: [I]n identifying positions to be affected in the reduction in force, the following applies:

1. The **skill, knowledge and abilities that are needed** within the region following a reduction in force **will be the determining factor** in the positions that are retained.

2. The most recent Performance Evaluation should be considered if there are two or more employees with equal qualifications for a position.

3. Length of service will be considered only if all other criteria are equal between two or more employees being considered for the reduction in force.

4. Part-time and temporary employees will be separated before full-time employees.

5. Once an employee's position has been identified for reduction, the employee cannot "bump" any other employee in an equal or lower classified position.

(*Id.* at 4 (emphasis added)). Certainly, the decisionmakers, pursuant to the 1999 Workforce Reduction Plan guidelines for selecting positions to eliminate, could determine that two City/County Presidents were not needed in St. Clair County. Also, under the 1999 Workforce Reduction Plan, the decisionmakers could determine that individual loan performance and commercial loan experience were appropriate "skills, knowledge, and abilities" to consider in determining whether to retain Slick or plaintiff. Further, the 1999 Workforce Reduction Plan did not require the decisionmakers to favor the factors of "education level, performance of branches, overall management ability, ratings on performance evaluations, and overall years of experience in the banking business," factors that plaintiff alleges favor her over Slick. (*See* Pl. Br. in Opp. to Mot. for Summ. J. at 18.) Therefore, the court finds no material distinction between the 1999 Workforce Reduction Plan and the procedures used by the decisionmakers in 2001.

For the foregoing reasons, the court finds plaintiff has not demonstrated that defendant's articulated reasons for her termination – that it decided to eliminate one City/County President from St. Clair County and that it decided to retain Slick and terminate plaintiff based on Slick's greater individual loan performance and his commercial loan experience – are a pretext for age and/or gender discrimination.

Therefore, the court finds that defendant's Motion for Summary Judgment is due to be granted and plaintiff's age and gender discrimination claims are due to be dismissed.

## B. FMLA

### 1. Interference Claim

Defendant contends that plaintiff was not denied a benefit to which she was entitled; therefore, she cannot establish an interference claim under the FMLA. Plaintiff does not oppose defendant's Motion for Summary Judgment on this claim. Therefore, defendant's Motion for Summary Judgment is due to be granted and plaintiff's FMLA/interference claim is due to be dismissed.

### 2. Retaliation

#### a. Prima Facie Case

Defendant contends that plaintiff cannot establish a causal connection between her FMLA leave and the elimination of her position because the decisionmakers did not know about her FMLA leave.

In order to establish a prima facie case of retaliation in violation of the FMLA, "a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an

adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000)(citations omitted), *cert. denied* 532 U.S. 1037 (2001). "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Id.* at 799 (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.1999)(quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985)))(internal quotations omitted). "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* This is because "[a] decision maker cannot have been motivated to retaliate by something unknown to him." *Id.* However, "[a]s with most facts, the defendant's awareness can be established by circumstantial evidence." *Id.* (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993)). But absent evidence sufficient to allow a reasonable jury to find otherwise, "knowledge" of protected activity may not be "imputed" to a decisionmaker who swears he did not have ***actual*** knowledge of the protected activity. *See Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1155-56 (11th Cir. 2002).

The decisionmakers testified that they were unaware of plaintiff's FMLA leave. (*See* doc. 30, Ex. 7 at 46-47; Ex. 8 at 29.) Mize testified that she was "sure [plaintiff's leave request] passed over [her] desk someway," but she did not remember it. (Doc. 30, Ex. 10 at 44-45.)

16

Because plaintiff has not presented sufficient circumstantial evidence to demonstrate the decision makers had actual knowledge of her FMLA leave, plaintiff has not established a prima facie case of retaliation. Therefore, defendant's Motion for Summary Judgment is due to be granted and plaintiff's FMLA retaliation claim is due to be dismissed.

### b. Pretext

As an alternative ground for dismissing plaintiff's FMLA retaliation claim, the court notes that plaintiff cannot establish pretext for the reasons set forth, *supra*, at 12-15.

## IV. CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this  25th  day of March, 2004.

*/s/ Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

17